# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | 2:14cr16 |
| | ) | **Electronic Filing** |
| ROBERT SCHATZMAN | ) | |

## MEMORANDUM ORDER

AND NOW, this 18th day of July, 2014, upon consideration of defendant's "Motion for Detention Hearing," which has been construed as an appeal/motion for reconsideration of [96] the order of January 17, 2014, entered by Magistrate Judge Mitchell, IT IS ORDERED that [170] the motion be, and the same hereby is, denied.

The January 17, 2014, order was entered after a detention hearing held on that date and directed that defendant be detained pending trial. Magistrate Judge Mitchell made the following findings in the order of detention:

> Probable cause exists on the indictment of the grand jury based on wiretaps, surveillance, and controlled purchases;
> There is a substantial likelihood of conviction in this matter, mandatory sentence of 10 years;
> Defendant has an extensive criminal record, including the fact that he is presently on state probation and pretrial release and has federal armed bank robbery conviction;
> He is also currently a bank robbery suspect;
> Defendant has substance abuse problems;
> Defendant has employment and family in the area;
> Defendant has committed crimes while under supervision; [and]
> The presumption of danger to the community and risk of flight [has not been] rebutted.

Order of Detention of January 17, 2014 (Doc. No. 96) at 2.

In the instant motion defendant does not seek to introduce new evidence that was unavailable at the detention hearing, but instead quibbles with the Magistrate Judge's findings and rationale after receiving the initial disclosure of Rule 16 and other materials from the government. He essentially seeks a hearing to explore the government's evidence against him and to permit this member of the court to make a second determination about whether there is

probable cause to believe defendant committed the charged offenses. The motion has been fully briefed and a transcript of the detention hearing has been filed into the record.

The availability of pretrial release is controlled by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150. Under the Act a defendant must be released on his own recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Thus, the question is whether the defendant presents <u>either</u> an unacceptable risk of flight or a danger to others. <u>United States v. Sazenski</u>, 806 F.2d 846, 848 (8th Cir. 1986). If, following a hearing, the judicial officer finds that no condition or combination of conditions of release will reasonably assure defendant's appearance and the safety of any other person in the community, detention must be ordered. 18 U.S.C. § 3142(e).

The purpose of the detention hearing is to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f). In making this determination, the judicial officer must take into account the available information concerning:

    (1)    The nature and circumstance of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)    The weight of the evidence against the person;

    (3)    The history and the characteristics of the person, including --

        (A)    The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>                        (B)    Whether, at the time of the current
>                               offense or arrest, the person was on probation,
>                               on parole, or another release pending trial,
>                               sentencing, appeal, or completion of sentence
>                               for an offense under federal, state, or local
>                               law; and
>
>               (4)     The nature and seriousness of the danger to any person
>                       or the community that would be posed by the person's
>                       release.

18 U.S.C. § 3142(g).

This court exercises *de novo* review over the detention order entered by the magistrate judge. See United States v. Delker, 757 F.2d 1390, 1393-95 (3d Cir. 1985). The magistrate judge's decision and reasoning is to be given careful consideration where a transcript of the detention hearing is available, id., even though the standard of review removes any obligation to accord deference to the magistrate judge's findings and decision. See United States v. Koenig, 912 F.2d 1190, 1193 (9th Cir. 1990). This court may make its independent determination based solely upon the evidence introduced at the prior hearing. Delker, 757 F.2d at 1395; Koenig, 912 F.2d at 1193 ("Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."); United States v. Torres, 929 F.2d 291, 292 (7th Cir. 1991) (district court may base its findings on transcript of the hearings before the magistrate judge).

The government bears the burden of proving the defendant either presents a risk of flight or a danger to the community. The government must prove the defendant is a risk of flight and that no condition or combination of conditions will assure his appearance at trial by a preponderance of the evidence. United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986). The government must prove the defendant is a danger to the safety of any other person and the community by clear and convincing evidence. Delker, 757 F.2d at 1399.

Where the record reflects probable cause to believe the defendant has committed a crime of violence or an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Bail Reform Act creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person in the community. 18 U.S.C. § 3142(e); United States v. Perry, 788 F.2d 100, 106 (3d Cir. 1986). A defendant may rebut the presumption by presenting some credible evidence that he will not pose a threat to the community upon his release. United States v. Giampa, 755 F. Supp. 665, 668 (W.D. Pa. 1990). Through the presumption Congress recognized that persons charged with violent or major drug trafficking felonies present a significant risk of continuing to engage in established patterns of criminal activity and thus pose a significant risk of pretrial recidivism. United States v. Strong, 775 F.2d 504, 508 (3d Cir. 1985).

After *de novo* review and careful consideration of the record, the positions of the parties and the magistrate judge's findings and reasoning, the Court finds:

1. There is probable cause to believe that defendant has violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i) and 846, and if convicted, is facing a mandatory five (5) years imprisonment;

2. There is probable cause to believe that defendant has violated 18 U.S.C. §§ 924(c)(1)(A)(i) and if convicted, is facing a mandatory five (5) years imprisonment consecutive to any other term of imprisonment imposed;

3. Subject to rebuttal by the [defendant], it must be presumed that no condition or combination of conditions will reasonably assure . . . . the safety of the community if there is probable cause to believe that the [defendant] committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et seq., . . . *See* 18 U.S.C. § 3142(e)(1), (3)(A). The rebuttable presumption set forth in § 3142(e) applies in this instance;

4. The amount of heroin attributed to defendant has yet to be quantified. Admittedly, defendant was not a major player in the drug trafficking giving rise to the charged conspiracy;

5. Violence is not the only danger to the community this Court must consider. The Court must also consider, whether, if released, defendant is likely to traffic in illicit narcotics;

6. Defendant has presented little credible evidence from which this Court could find that he has met the burden necessary to rebut the statutory presumption of detention;

7. There is a significant danger in this case that if released defendant will continue to engage in drug trafficking;

8. All of the factors set forth at 18 U.S.C. § 3142(g) weigh in favor of detention; and

9. In light of defendant's background and the presumption set forth in § 3142(e), this Court concludes that there is no condition or set of conditions, if imposed, that would reasonably assure the safety of the community if defendant were released pending trial.

The government proffered the testimony FBI task force officer Shane Countryman and submitted him to cross examination by defense counsel at the detention hearing. The investigation was grounded in wiretaps that were ongoing between September and December of 2013 and included the targets of co-defendants Dwight Hester, Frederick Mack and Allen Turner. Mack would regularly travel to Brooklyn, New York, and return with 100 grams or more of raw heroin, which was then processed, packaged and distributed in the Pittsburgh area. Intercepted conversations discussed openly the raw nature of the heroin and the processing for resale. Mack and a companion were stopped during their return from Brooklyn on November 20, 2013, and 50 grams of raw heroin was seized.

Conversations on Allen Turner and the New York source's telephones subsequently were intercepted. The source was thereafter arrested and 150 grams of heroin were seized.

Defendant had intercepted conversations with Mack and Turner. He discussed transactions in heroin with both of them. Defendant arranged to get quantities of heroin from Mack, explaining that "I'm about to make a power move." He would then sell the heroin and have money to buy more heroin.

In September defendant used a 9 millimeter Taurus as collateral in order to get heroin from Mack. Defendant brought the firearm to Mack and received heroin on credit. A few days later defendant paid the then outstanding balance of $130.00 to recover the handgun.

Defendant essentially contends that the record demonstrates only that he is a bottom-level consumer of heroin who purchased heroin for his own consumption. This purportedly is borne out by the Rule 16 material produced by the government, which reveals that the government's proffers at the detention hearing "were inaccurate." In fact, the Rule 16 materials reveal that defendant was not engaged in the distribution of heroin in any manner.

Defendant's contention is misplaced for at least three reasons. First, neither logic nor experience support the notion that all or even the bulk of the government's inculpatory evidence will be contained in the materials falling under the ambit of Rule 16. Generally, the opposite is true as the defense bar frequently notes in efforts to obtain more encompassing discovery.

Second, the return of an indictment charging a defendant with a qualifying offense in itself triggers the presumption. See United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986) ("Our holding that the indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e) is in accord with the unanimous position of the other circuits that have reached the issue."). A majority of the members of the grand jury have found probable cause to belief that defendant committed the charged offenses. Thus, the presumption is in full force and effect.

Third, defendant's proffered evidence and proposed conditions fall short of rebutting the presumption. While defendant's wife did indicate she would permit him to return to the marital home and would be willing to be sworn as a guardian, the current charges as well as the pending state charges arose while defendant was living in the marital home under the same circumstances save electronic monitoring, drug testing and the guardian commitment. During this time

defendant's wife was only aware that defendant was "having problems with substance abuse." And while she voiced her support for drug treatment, she had been aware that defendant had been arrested with heroin in March of 2013, charged with possession with intent to deliver and had been using heroin since that time. She and defendant had not talked about his drug use or any measures to eliminate the same during the nine months between those events and his detention hearing.

Against this backdrop, it cannot be overlooked that defendant had a significant criminal history and was on state probation and pretrial release during the time he is alleged to have committed the instant federal offenses. That history includes both a violent felony conviction and a recent drug trafficking charge.

Further, officer Countryman's proffer clearly referenced transactions wherein defendant would sell heroin obtained from his co-defendants and then use the profits to purchase heroin for himself. It also referenced the receipt of heroin on credit secured by the collateral of a handgun, followed by the sale of that heroin and the payment of the balance due – a transaction far more indicative of selling drugs in furtherance of the operation in order to make money and support a heroin habit than one involving the mere consumption of heroin by an end-user. In other words, the record currently supports a probable cause finding that defendant was using the source of supply from his co-defendants to generate money through drug sales that he arranged in order to support his heroin addiction. Such activity is more than sufficient to find a substantial likelihood that defendant was aware of the conspiratorial undertaking and became a member of it with the intent to further some of its basic aims and goals.

In light of the record as developed to date, the court finds that defendant has failed to rebut the presumption of dangerousness to the community. Accordingly, there is no basis to pursue defendant's request to have a new hearing wherein "the Court may review the evidence

and make a determination of whether the absence of evidence supporting probable cause in this case rebuts the presumption in favor of detention." Reply Brief (Doc. No. 177) at ¶ 14.

Rebutting the presumption created by the Bail Reform Act requires more than the imposition of conditions that are reasonably likely to uncover the resumption of recidivist activity should it occur; what is required is a showing that there is a reasonable assurance that such activity will not resume upon the defendant's release in the first instance. Such a showing has not been established. Consequently, defendant's motion for detention hearing has been denied and defendant shall be detained pending trial in accordance with the January 17, 2014, detention order entered by Magistrate Judge Robert C. Mitchell.

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc: Troy Rivetti, Esquire
    Jonathan B. Ortiz, Esquire
    Michael E. Moser, Esquire

    (*Via CM/ECF Electronic Filing*)